H. T. TYLER, *et ux.*, v. HILL BROTHERS, INC.

173 So. 147.
Opinion Filed March 4, 1937.
Rehearing Denied March 29, 1937.

*James M. Carson* and *A. C. Dressler,* for Appellants; *Robert C. Lane* and *Alfred E. Sapp,* for Appellee.

PER CURIAM.—The appeal here is from final decree in foreclosure. The case was referred to a Special Master to

make report of findings of fact and the law. The Master's report of findings of facts was sustained by the Chancellor and there is ample evidence in the record to support the findings. Therefore, as a statement of the case we ·adopt the findings of facts made. by the Special Master which are as follows:

"On or about June 11, 1931, Grady Tyler, a brother of the defendant, H. D. Tyler, and a brother-in-law of the defendant, Gladys B. Tyler, was found short in his accounts with the plaintiff, Hill Brothers, Inc., a Florida Corporation, by whom he was then employed as a salesman. This shortage amounted to $1210.98 and at said time the said Grady Tyler was also indebted to Hill Brothers, Inc., for money advanced and loaned by the plaintiff to him in the sum of $539.02. Grady Tyler, sometime prior to June 11, 1931, while engaged as an employee of the plaintiff had previously been found short in his accounts, which shortage had been replaced by him. Upon the occurrence of the first shortage he had been warned by Hill Brothers, Inc., that if he were ever found short in his accounts again 'it would be the last time.' The first shortage was replaced by Grady Tyler through a loan of money made to him in part by one of the executives·of the plaintiff. It was repaid by deducting from his salary a certain sum of money each month.

2

"Grady Tyler, upon being found short in June, 1931, as aforesaid, immediately called upon and appealed to his brother, H. D. Tyler, for assistance in covering the shortage. At the time of his visit to H. D. Tyler, Grady Tyler was in a highly nervous condition and seemed to be laboring under the fear that unless the shortage was immediately covered in a manner suitable to Hill Brothers, Inc., he would be arrested and.charged with the crime of embezzle-

ment.  Upon this visit he was advised by the defendant, H. D. Tyler, that he did not have property or funds with which to cover the shortage.

### 3

"Immediately thereafter, Grady Tyler, in company with R. H. Hill, President of Hill Brothers, Inc., called upon H. D. Tyler for the purpose of determining whether or not H. D. Tyler, could, out of his individual property, make adjustment of the shortage satisfactory to Hill Brothers, Inc.  At this conference the President of Hill Brothers, Inc., requested to know what property H. D. Tyler owned which could be pledged or transferred to Hill Brothers, Inc., in satisfaction of their indebtedness due the plaintiff from Grady Tyler.  The representative of Hill Brothers, Inc., through his attitude and conversation with H. D. Tyler, clearly conveyed to him that unless satisfactory arrangement and adjustment of the shortage was made, Grady Tyler would 'have to take the consequences,' which all the parties understood to mean would involve the criminal prosecution of Grady Tyler for embezzlement.  This conversation took place several days prior to June 20, 1931.

### "4.

"On June 20, 1931, Grady Tyler delivered to his brother, H. D. Tyler, an unexecuted mortgage and note in the sum of $1,750.00 for the purpose of procuring the execution of the mortgage and note by H. D. Tyler and his wife.  This mortgage and note were payable to Hill Brothers, Inc., and were to be used in settlement of the indebtedness from Grady Tyler to Hill Brothers, Inc., including the amount of the shortage and advances.

From the testimony it appears that there was at least a tacit understanding between the representative of Hill

Brothers, Inc., and H. D. Tyler that in the event the mortgage was executed by H. D. Tyler and his wife to Hill Brothers, Inc., in satisfaction of the indebtedness due from Grady Tyler to Hill Brothers, Inc., including both the amounts of advances and shortage, that no prosecution for embezzlement would be instituted or maintained against Grady Tyler because of the shortage.

"5.

"This note and mortgage was not executed by H. D. Tyler and his wife. The reason given by Tyler for refusing to sign this note was because it failed to state that it was a second mortgage. He further testified he would not have signed the mortgage and note at all events.

"6.

"Sometime after June 20, 1931, H. D. Tyler consulted his attorney in reference to the execution by him of a note and mortgage to Hill Brothers, Inc., to satisfy his brother's indebtedness to Hill Brothers, Inc., including the amount of the shortage, and under advise of counsel, on July 6, 1931, H. D. Tyler held a telephonic conversation with H. D. Hill, President of Hill Brothers, Inc., and arranged to have his secretary take the conversation in shorthand and transcribe the same. The purpose of procuring this detailed and accurate transcription of this conversation was to establish by indisputable evidence that Hill Brothers, Inc., through its officers was threatening Grady Tyler with criminal prosecution unless a mortgage was executed by H. D. Tyler in satisfaction of the indebtedness due Hill Brothers, Inc., including the shortage as aforesaid. In this conversation Hill was led by Tyler to confirm a previous conversation had between H. D. Tyler and Hill in which Hill had threatened criminal action against Grady Tyler unless the mort-

gage and note were executed by H. D. Tyler. This telephonic conversation was arranged by H. D. Tyler and the stage for its transcription was set by him for the purpose of assuring himself that he could successfully contest the validity of the mortgage because of coercion and duress occasioned by the threats of criminal prosecution of his brother, Grady Tyler, in the manner hereinabove set forth, and H. D. Tyler executed the mortgage and note and procured his wife's execution thereof, in the belief that the proofs that he had obtained rendered the mortgage and note invalid. He did not consent to the execution of the mortgage and note, nor did he or his wife execute them, until he felt certain they were unenforceable.

"7.

"Some time prior to July 8, 1931, but subsequent to June 20, 1931, H. D. Tyler, who owned the property described in the mortgage attempted to be foreclosed in this cause, conveyed the same to his mother-in-law, who immediately reconveyed the same to H. D. Tyler, and the defendant, Gladys B. Tyler, his wife, as tenants by the entireties.

"8.

"On July 8, 1931, Grady Tyler procured from Hill Brothers, Inc., or their attorney, Robert C. Lane, another mortgage dated the 8th day of July, 1931, encumbering the following described property:

" 'Lots sixteen (16) and seventeen (17) block fifty-two (52) of Section Two (2) Miami Shores, according to plat thereof recorded in Plat Book 10, page 37, of the Public Records of Dade County, Florida.'

"Together with a promissory note in the sum of $1,750.00, made payable to Hill Brothers, Inc., and delivered the same to his brother, H. D. Tyler, at his place of business, 2020

Biscayne Boulevard, Miami Florida, and this mortgage was on July 9, 1931, executed by H. D. Tyler and his wife, Gladys B. Tyler, securing the said promissory note which was also executed by the said H. D. Tyler and Gladys B. Tyler, and the same were then after due execution delivered to Grady Tyler, who in turn delivered the same to Hill Brothers, Inc., and received from them a receipt for the said mortgage and note which contained a statement that the said mortgage and note satisfied in full all claims of Hill Brothers, Inc., against Grady Tyler of every nature, character and description. At the time of the execution of said mortgage and note Gladys B. Tyler stated to the Notary Public taking her acknowledgment upon said note, that she was executing the same 'to protect her children.' H. D. Tyler testified that he executed the mortgage and note because he believed it to be invalid due to the threats of prosecution made by Hill Brothers, Inc., as aforesaid, and that he further executed the mortgage for the purpose of saving his brother from criminal prosecution.

"9.

"After the institution of the foreclosure proceedings in the above entitled cause the defendants, H. D. Tyler and Gladys B. Tyler, filed their answer in these foreclosure proceedings, setting up that the execution of the mortgage was procured by duress. Thereupon Hill Brothers, Inc., immediately instituted criminal proceedings against Grady Tyler in Dade County, Florida, charging him with embezzlement. The information was nolle prossed by the County Solicitor.

"10.

"The amount of the principal of the mortgage is $1,750.00 and interest up to and until August 13, 1935, is $573.33, and in the event the court determines that the above mort-

gage is valid and that the complainant is entitled to fore-, close the same, then a reasonable fee to be allowed the solicitor for the complainant is $275.00."

So it appears that the mortgage was given to secure a note, which note obligated the maker, H. D. Tyler, to pay to Hill Brothers, Inc., a Florida corporation, the sum of $1,750.00, with interest, which was the amount of the agreed indebtedness due from the obligor's brother, Grady Tyler, to Hill Brothers, Inc., for money advanced to him, Grady Tyler, and for money which Grady Tyler had received as agent and servant of Hill Brothers, Inc., and had wrongfully converted to his own use; that prior to the execution of the note and mortgage H. D. Tyler and Gladys B. Tyler, his wife, had had ample opportunity to consult counsel, and did consult counsel and were advised by counsel in regard to the force and effect of the execution and delivery of the note and mortgage and that after being advised by counsel they freely and voluntarily executed the note and mortgage, believing that the same could be defeated by showing that Hill Brothers, Inc., had agreed not to prosecute Grady Tyler if the shortage and other indebtedness was settled and that Hill Brothers, Inc., would accept the note and mortgage in settlement of Grady Tyler's obligation.

Appellant contends, (1) that the mortgage was procured by blackmail and was procured by acts in violation of Section 5092 R. G. S., 7194 C. G. L. That contention is not tenable because there is neither any plea nor is there evidence in the record to show that Hill Brothers, Inc., at any time *maliciously* threatened to accuse another of any crime or offense.

The facts in this case are entirely different from those in the case of Burton v. McMillan, 52 Fla. 469, 42 Sou. 849,

and the cases cited in that opinion do not present facts parallel to the case at bar.

The decree appealed from should be affirmed on authority of Smith v. Commercial Bank of Jasper, 77 Fla. 163, 81 Sou. 154; Johnson v. Allen, 22 Fla. 224; Commercial Credit Co. v. Davis, 103 Fla. 519, 137 Sou. 688.

So ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.